# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 5, 2023        Decided March 5, 2024

No. 22-5216

AMERICAN FOREST RESOURCE COUNCIL, ET AL.,
APPELLANTS

v.

MARTHA WILLIAMS, PRINCIPAL DEPUTY DIRECTOR OF THE
U.S. FISH AND WILDLIFE SERVICE AND DEBRA A. HAALAND,
SECRETARY OF INTERIOR,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-00601)

———

*Tyler G. Welti* argued the cause for appellants. With him on the briefs were *Dominic M. Carollo* and *Susan Elizabeth Drummond*.

*Joan M. Pepin*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Todd Kim*, Assistant Attorney General, and *Rachel Heron* and *Brian C. Toth*, Attorneys.

Before: SRINIVASAN, *Chief Judge*, WALKER, *Circuit Judge*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*:

## I.    Introduction

On January 15, 2021 the U.S. Fish and Wildlife Service issued a proposed rule greatly reducing the amount of land in the Pacific Northwest designated as critical habitat for an endangered species of spotted owl. After a change in presidential administrations, however, the Service reversed course and moved to withdraw the proposed rule before it took effect. In order to do so, the Service twice issued rules delaying the effective date of the proposed rule. The Council challenged the validity of both "delay rules," but after the rules had expired the district court determined the plaintiffs' claims had become moot and dismissed their case. We agree and affirm the judgment of the district court.

## II.    Background

In 1992 the Fish and Wildlife Service, invoking its authority under the Endangered Species Act, 16 U.S.C. §§ 1531–1544, designated approximately 6.8 million acres of land in the Pacific Northwest as "critical habitat" for the northern spotted owl (*Strix occidentalis caurina*). *See* Endangered and Threatened Wildlife and Plants; Determination of Critical Habitat for the Northern Spotted Owl, 57 Fed. Reg. 1796 (Jan. 15, 1992). A later addition increased the total area of the critical habitat designation to approximately 9.5 million acres. *See* Endangered and Threatened Wildlife and Plants; Revised Designation of Critical Habitat for the Northern Spotted Owl,

77 Fed. Reg. 71,876 (Dec. 4, 2012). In August 2020, the Service proposed a rule that would have "excluded," *i.e.*, removed, about 200,000 acres from the critical habitat designation. *See* Endangered and Threatened Wildlife and Plants; Revised Designation of Critical Habitat for the Northern Spotted Owl, 85 Fed. Reg. 48,487 (Aug. 11, 2020). In January 2021, shortly before the Trump Administration left office, the Service published a final rule that instead excluded nearly 3.5 million acres from the critical habitat designation, effective March 16, 2021. *See* Endangered and Threatened Wildlife and Plants; Revised Designation of Critical Habitat for the Northern Spotted Owl, 86 Fed. Reg. 4820 (Jan. 15, 2021).

Soon after the Biden Administration took office, the White House Chief of Staff directed all executive agency heads to identify rules that had not yet come into effect and to consider postponing the effective dates of the rules by 60 days in order to review any "substantial questions of law, fact, or policy" the pending rules might raise. Memorandum for the Heads of Executive Departments and Agencies, 86 Fed. Reg. 7424, 7424 (Jan. 28, 2021). On February 26, 2021 the Service issued a rule delaying the effective date of the January 2021 rule from March 16 to April 30 (the First Delay Rule). *See* Endangered and Threatened Wildlife and Plants; Revised Designation of Critical Habitat for the Northern Spotted Owl; Delay of Effective Date, 86 Fed. Reg. 11,892. The Service made the First Delay Rule effective immediately, pursuant to Section 553(b)(B) of the Administrative Procedure Act (APA), which authorizes an agency for "good cause" to dispense with the notice-and-comment procedure ordinarily required for the issuance of a final rule. *See id.* at 11,893–94. Approximately one week later, Appellant American Forest Resource Council and its fellow plaintiffs sued the director of the Service. They claimed the grounds on which the Service invoked Section 553(b)(B) — threats of litigation over the owl's

critical-habitat designation and potential substantive problems with the January 2021 rule — did not constitute "good cause" within the meaning of the statute.

On April 29, one day before the January 2021 rule would have taken effect, the Service issued another rule delaying the effective date to December 15, 2021 (the Second Delay Rule). *See* Endangered and Threatened Wildlife and Plants; Revised Designation of Critical Habitat for the Northern Spotted Owl; Delay of Effective Date, 86 Fed. Reg. 22,876. In the Second Delay Rule, which was also issued without having gone through the notice and comment procedure, the Service announced that it intended to revise or withdraw the January 2021 rule. *Id.* at 22,877, 22,880–82.

On July 20, 2021 the Service proposed a new rule that would withdraw the January 2021 rule and instead exclude only 204,000 acres of land from the owl's designated critical habitat. *See* Endangered and Threatened Wildlife and Plants; Revised Designation of Critical Habitat for the Northern Spotted Owl, 86 Fed. Reg. 38,246. Soon thereafter, the plaintiffs filed a motion to supplement their complaint with claims alleging the release of Second Delay Rule also violated the APA. On September 27, the plaintiffs moved for a preliminary injunction barring the Service from implementing either Delay Rule. The district court denied the preliminary injunction motion on October 13. The plaintiffs did not appeal the denial.

5



**Jan. 1992**
Service designates 6.8 million (later 9.5 million) acres of land as critical habitat for the northern spotted owl.

**Aug. 2020**
Service proposes to exclude about 200,000 acres from the habitat designation.

**Jan. 2021**
Service publishes final rule that excludes over 3.5 million acres of habitat, effective Mar. 2021.

**Feb. 2021**
Service issues First Delay Rule, delaying effective date of the Jan. 2021 rule to Apr. 2021.

**Mar. 2021**
Plaintiffs sue Service in district court, alleging First Delay Rule violates APA.

**Apr. 2021**
Service issues Second Delay Rule, further delaying the effective date of the Jan. 2021 rule to Dec. 2021.

**July 2021**
Service proposes a new rule that would withdraw the Jan. 2021 rule and exclude only about 200,000 acres of habitat.

**Aug. 2021**
Plaintiffs move to supplement or amend their complaint with an APA challenge to the Second Delay Rule.

**Sept. 2021**
Plaintiffs move for a preliminary injunction, which the district court denies. Plaintiffs do not appeal.

**Nov. 2021**
Service issues a final rule withdrawing the Jan. 2021 rule and excluding only 200,000 acres. Plaintiffs do not petition for review.

On November 10, 2021 the Service issued a final rule withdrawing the January 2021 rule and removing only 204,294 acres of land from the critical habitat designation. *See* Endangered and Threatened Wildlife and Plants; Revised Designation of Critical Habitat for the Northern Spotted Owl, 86 Fed. Reg. 62,606. The final rule took effect on December 10, 2021. The Council did not challenge the November 2021 final rule.

On February 25, 2022 the Service moved to dismiss the Council's lawsuit on the ground that the case had become moot. The district court agreed and dismissed the case for lack of subject-matter jurisdiction.

### III.  Standard of Review

The Council appeals the district court's dismissal of its complaint, arguing its claims are not moot and, in the alternative, they come within both of the recognized exceptions to mootness. Our review is *de novo*. *See, e.g.*, *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009).

### IV.  Analysis

We first conclude that the Council's lawsuit against the Service is indeed moot. We then consider the Council's claim to the exception from mootness on the ground that the action they challenge is "capable of repetition yet evading review."

### A. Mootness

"In general, 'a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Porzecanski v. Azar*, 943 F.3d 472, 479 (D.C. Cir. 2019) (quoting *Conservation Force, Inc. v.*

*Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013)).  "For example, a case is moot if intervening events make it impossible 'to grant any effectual relief.'"  *Id.* (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)).

As the district court correctly determined, it would have been pointless to render a judgment on the validity of the First and Second Delay Rules.  Both rules had by then expired and had no continuing effect.  For example, neither one made any factual determination upon which the November 2021 rule was predicated.  *Cf. Union of Concerned Scientists v. Nuclear Regul. Comm'n*, 711 F.2d 370, 377–79 (D.C. Cir. 1983) (holding a controversy over the validity of an expired delay rule was not moot because it had also made "a safety determination upon which the final rule was partially predicated"); *cf. also Nat. Res. Def. Council v. Abraham*, 355 F.3d 179, 187–88, 204–06 (2d Cir. 2004) (hearing a challenge to an expired delay rule where, due to a certain statutory provision, the validity of the final rule depended upon the validity of the delay rule).  Nor does the Council's challenge relate to any substantive regulation first promulgated in one of the Delay Rules and subsequently adopted in the November 2021 rule.  *Cf. Am. Maritime Ass'n v. United States*, 766 F.2d 545, 554 n.14 (D.C. Cir. 1985) (holding a controversy over the validity of an expired interim rule was not moot because the final rule "reaffirm[ed] the findings discussed in the interim rule and basically adopt[ed] the interim rule's [substantive] regulation," wherefore the petitioner's challenge was "equally applicable to the final rule and the interim rule").  Nor did either Delay Rule change a future compliance date that may have provided a basis for a live controversy.  *Cf. Arizona v. EPA*, 77 F.4th 1126, 1127–28 (D.C. Cir. 2023).  Put simply, the Council has not shown how invalidating the expired Delay Rules would provide it or its fellow plaintiffs with any "effectual relief."  The Council's challenges

to the validity of the First and Second Delay Rules are therefore moot.

**B. Capable of repetition yet evading review**

Plaintiffs alternatively argue the Council's claims against the Service come within the exception to mootness for matters "capable of repetition yet evading review." That exception applies if two conditions are met: "(1) the challenged action is too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." *In re Sealed Case*, 77 F.4th 815, 826 (D.C. Cir. 2023) (cleaned up).

As to the first condition, we presume that "agency actions of less than two years' duration cannot be 'fully litigated' prior to cessation or expiration, so long as the short duration is typical of the challenged action." *Del Monte*, 570 F.3d at 322 (quoting *Pub. Utils. Comm'n of the State of Cal. v. FERC*, 236 F.3d 708, 714 (D.C. Cir. 2001)). The plaintiffs, however, have neither alleged nor shown that Service delay rules such as those at issue in this case typically expire within two years.

As to the second condition, the plaintiffs have not plausibly suggested they will be subjected to another Service delay rule in the future. The November 2021 rule withdrew and replaced the January 2021 rule. There is, in other words, no longer any proposed critical-habitat-reduction rule for the Service to delay. Nor have the plaintiffs pointed to any other proposed rule affecting their interests the Service might delay via a rulemaking issued without notice-and-comment. There is, therefore, no indication that "the legal wrong complained of by the plaintiff is reasonably likely to recur." *Del Monte*, 570 F.3d at 324. We therefore conclude that the "capable of repe-

tition yet evading review" exception does not apply to this case.[*]

### V.    Conclusion

For the reasons stated, the judgment of the district court is, therefore,

*Affirmed*.

---

[*] The plaintiffs also invoked the "voluntary cessation" exception to mootness, but that exception does not apply here. The Delay Rules expired by their terms. It was the mere passage of time that caused the cessation of the Rules, not any strategic act on the part of the Service.